UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

TOBIAS BERMUDEZ CHAVEZ, *et al.*,

                         Plaintiffs,

             -v-

OCCIDENTAL CHEMICAL CORPORATION,

                      Defendant.

------------------------------------------------------------------X

17 Civ. 3459 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

In 1993, a group of individuals from countries including Costa Rica, Ecuador, and

Panama filed a putative class action in Texas state court against a number of chemical

manufacturers including, among others, the defendant here, Occidental Chemical Corp.

("Occidental"). The plaintiffs had all lived or worked on banana plantations. They alleged that

they had suffered adverse health consequences as a result of exposure to a chemical pesticide

called dibromochloropropane ("DBCP"). In 2010, some 17 years later, after a long train of

procedural misadventures, the plaintiffs dismissed their claims voluntarily.

This case was filed in 2011, and, as filed, involved similar claims against substantially

the same defendants. The plaintiffs here, however, were not parties to the original 1993 action.

Nor are they subject to the 2010 dismissal. They were, however, absent members of the putative

class: They are foreign nationals from Costa Rica, Ecuador, and Panama who, like the named

plaintiffs in the 1993 lawsuit, allege tortious exposure to DBCP between the 1960s and early

1980s. Their claims against Occidental were transferred to this District in May 2017, following

a circuitous procedural path that led from Louisiana (where the case was brought) to Delaware to

(as against Occidental only) this Court. Occidental now moves for judgment on the pleadings, arguing that plaintiffs' claims are time-barred under New York law.

For the following reasons, the Court finds plaintiffs' claims timely and therefore denies Occidental's motion. The Court's ruling, however, turns on an important and unresolved question of New York law that has divided courts in this District: whether New York law tolls the statute of limitations for purported class members during the pendency of a class action filed in another state. The Court holds that New York law does provide for such tolling. Therefore, the Court holds, based on the long-running Texas litigation initiated in 1993, plaintiffs' claims were long tolled and are timely today. Further, in the interest of economy, the Court certifies this order for interlocutory appeal to the United States Court of Appeals for the Second Circuit.

## I.  Background[1]

### A.  Factual Background

Occidental manufactured and distributed DBCP, a pesticide known to cause sterility, sexual and reproductive abnormalities, and cancer. Compl. ¶¶ 8–10, 65. Plaintiffs allege that they were exposed to Occidental's DBCP when they lived and worked on or around DBCP-treated banana plantations in Costa Rica, Panama, and Ecuador. *Id.* ¶¶ 66–68. Because they were never informed of the dangers posed by DBCP, Plaintiffs allege, they did not wear any

---

[1] The facts here are drawn primarily from two sources: the complaint, Dkt. 1 ("Compl."), and the parties' joint statement of undisputed procedural history, Dkt. 191 ("JSPH"). The Court also takes notice of certain judicial decisions and court filings that preceded this litigation. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) ("On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." (internal quotation marks omitted)); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes."). These documents were submitted to the Court as one exhibit attached to the JSPH. For ease of reference, the Court will refer to each tabbed document as its own, numbered exhibit.

protective covering or respiratory equipment to prevent exposure. *Id.* ¶ 5. As a result, they suffered a host of DBCP-related injuries, including sterility and increased risk of cancer. *Id.* ¶¶ 69, 186.

## B. Procedural History

The procedural history of this case is baroque. The Court first reviews the two-decade-long history of the putative class actions (styled as *Carcamo* and, later, *Delgado*) brought by plaintiffs bringing similar claims against defendants including Occidental. As explained, these cases have proceeded in Texas, Costa Rica, and Hawaii; none, however, resulted in the certification of a class. The Court then turns to the procedural history of this lawsuit (*Chavez*), which arrived in this Court after pit stops in Louisiana and Delaware.

### 1. The Earlier Putative Class Actions in Texas, Costa Rica, and Hawaii

In August 1993, a putative class action was filed in Texas state court, captioned *Carcamo v. Shell Oil Co.*, 93-C-2290. *See* JSPH ¶¶ 1–4; *id.* Exs. 1–4. The *Carcamo* complaint sought relief against Occidental and other chemical concerns for the exposure to DBCP of the named plaintiffs and the putative class. *Id.* Ex. 4. The *Carcamo* plaintiffs proposed to represent a class defined, as relevant here, as "[a]ll persons exposed to DBCP, or DBCP-containing products, designed, manufactured, marketed, distributed or used by [defendants including Occidental] between 1965 and 1990 in [countries including Costa Rica, Panama, and Ecuador]." *Id.* Ex. 6 at 2.

Before a motion for class certification was filed or resolved, however, the *Carcamo* defendants impleaded Dead Sea Bromine, a corporation indirectly owned in part by the State of

Israel. *Id.* ¶ 7; *id.* Ex. 7. Dead Sea Bromine then removed the case to federal court, asserting jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"). *Id.* ¶ 7; *id.* Ex. 7.[2]

The *Carcamo* case was assigned to Judge Sim Lake of the United States District Court for the Southern District of Texas. In June 1994, it was consolidated with a related matter, which together were re-captioned *Delgado v. Shell Oil Co.*, No. H-94-1337. JSPH ¶ 8; *id.* Ex. 8 at 15.

In November 1994, Judge Lake issued a scheduling order directing the parties to provide, *inter alia*, their views on class certification, and stating the court's intention to resolve a series of dispositive motions, including any motions to dismiss for *forum non conveniens*. *Id.* ¶ 9; *id.* Ex. 9. Although the plaintiffs never filed a motion for class certification under Federal Rule of Civil Procedure 23, their letter to Judge Lake asserted that class treatment would be appropriate. *Id.* ¶ 10; *id.* Ex. 10. In their response, the defendants disputed that plaintiffs could satisfy Rule 23, *id.* ¶ 11; *id.* Ex. 11; the plaintiffs, in reply, reiterated their position, *id.* ¶ 13; *id.* Ex. 13. Several months later, but before class certification was briefed or decided, defendants moved to dismiss for *forum non conveniens*. *Id.* ¶ 14; *id.* Ex. 14.

On July 11, 1995, the court resolved the motion to dismiss in a published memorandum and order. *See Delgado v. Shell Oil Co.*, 890 F. Supp. 1324 (S.D. Tex. 1995). It held first that jurisdiction was proper, including under the FSIA. It then conditionally granted the motion to dismiss on *forum non conveniens* grounds, reasoning that adequate alternative fora existed in the plaintiffs' home countries. *Id.* at 1372–73. The Court conditioned dismissal on, among other things, defendants participating in expedited domestic discovery and waiving certain procedural and jurisdictional defenses abroad. *Id.* The Court also issued an injunction barring plaintiffs

---

[2] Under certain circumstances, the FSIA provides for federal jurisdiction over actions against foreign states, their instrumentalities, or their agencies. *See* 28 U.S.C. §§ 1330, 1441(d), 1603.

from commencing any new DBCP-related actions. *Id.* at 1374–75. Finally, the Court noted that "a number of other motions" were pending. It held that "all pending motions . . . not otherwise expressly addressed in this Memorandum and Order are DENIED as MOOT." *Id.* at 1375. The opinion did not address the merits of class certification.

The order did, however, include a "return jurisdiction" clause. It stated:

> Notwithstanding the dismissals that may result from this Memorandum and Order, in the event that the highest court of any foreign country finally affirms the dismissal for lack of jurisdiction of any action commenced by a plaintiff in these actions in his home country or the country in which he was injured, that plaintiff may return to this court and, upon proper motion, the court will resume jurisdiction over the action as if the case had never been dismissed for [*forum non conveniens*].

*Id.*

On October 27, 1995, after the defendants had satisfied the conditions the Court had set for dismissal, the Court entered a "Final Judgment" dismissing the consolidated actions and permanently enjoining plaintiffs and others with knowledge of the judgment from commencing new DBCP-related litigation. JSPH ¶ 17; *id.* Ex. 17. Significantly, in a separate order issued the same day, Judge Lake clarified that the injunction applied only to "plaintiffs (and intervenor plaintiffs) in the actions before the court," rather than "any potential plaintiff not before it." *Id.* ¶ 16; *id.* Ex. 16.

The plaintiffs immediately appealed the Court's exercise of subject-matter jurisdiction to the United States Court of Appeals for the Fifth Circuit. *Id.* ¶ 17.

Meanwhile, the Costa Rican plaintiffs prosecuted their claims in Costa Rica. However, they were rebuffed by Costa Rica's Supreme Court, which held that the Costa Rican courts lacked jurisdiction over the DBCP claims. *See id.* Ex. 21 at ¶ 14. As a result of that dismissal, in 1996, the Costa Rican plaintiffs moved for reinstatement of their claims before Judge Lake

pursuant to the return jurisdiction clause. *Id.* Judge Lake denied the motion without prejudice, deferring final judgment on the motion pending resolution of the plaintiffs' appeal to the Fifth Circuit. *See id.* Ex. 24 at ¶ 4.

On October 19, 2000, the Fifth Circuit affirmed Judge Lake's judgment. *See Delgado v. Shell Oil Co.*, 231 F.3d 165 (5th Cir. 2000). In April 2001, the United States Supreme Court denied certiorari. JSPH ¶ 19.

All the while, parallel litigation was underway in Hawaii. In 1997, a separate set of plaintiffs filed a DBCP class action in Hawaii state court. *Id.* ¶ 42. The case followed roughly the same procedural trajectory as the *Delgado* action: defendants impleaded Dead Sea Bromine; Dead Sea Bromine removed; the federal district court dismissed plaintiffs' claims on *forum non conveniens* grounds; and the plaintiffs appealed. *Id.* ¶¶ 43–46. In that case, however, the Ninth Circuit reversed, holding the district court lacked subject matter jurisdiction under the FSIA. *Id.* ¶ 47; *see Patrickson v. Dole Food Co.*, 251 F.3d 795 (9th Cir. 2001).

This decision created a circuit split with the Fifth Circuit. The Supreme Court granted *certiorari.* JSPH ¶ 49. Siding with the Ninth Circuit, the Supreme Court held that Dead Sea Bromine was not an instrumentality of the State of Israel and therefore its removal of the case to federal court under the FSIA had been improper. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 480 (2003).

The Hawaii plaintiffs therefore returned to state court. There, the First Circuit Court of Hawaii denied the plaintiffs' motion for class certification, and, in 2009, granted defendants' motion for summary judgment on limitations grounds. JSPH ¶¶ 50–58. In 2014, the Hawaii Intermediate Court of Appeals affirmed. *Id.* ¶ 59. In 2015, however, the Supreme Court of

Hawaii vacated the limitations holding, thereby reinstating the case. *Id.* ¶ 60; *Patrickson v. Dole Food Co.*, 137 Hawai'i 217 (2015).

Meanwhile, back in Texas, in light of the Supreme Court's 2003 decision in *Patrickson*, the *Delgado* plaintiffs filed a Rule 60 motion before Judge Lake requesting vacatur of the 1995 *forum non conveniens* dismissal, on the theory that the district court had lacked jurisdiction *ab initio*. *Id.* ¶ 21; *id.* Ex. 21. Judge Lake agreed that the permanent injunction was now void. However, Judge Lake denied the motion to vacate the *forum non conveniens* dismissal. Judge Lake reasoned that a subsequent change in decisional law did not require vacatur, because the court had had at least an "arguable" basis for exercising jurisdiction. *Id.* Ex. 22 at 8–10. And denying vacatur, he held, would not deny the plaintiffs their day in court given the return jurisdiction clause (which would enable him, as necessary, to remand the case to state court). *Id.* Ex. 22 at 14. Accordingly, on March 15, 2004, Judge Lake issued another "Final Judgment," this one vacating the permanent injunction and dismissing the action for lack of jurisdiction. *Id.* ¶ 23.

Shortly thereafter, the Costa Rican plaintiffs moved before Judge Lake for remand to state court, so that a court of competent jurisdiction could decide whether to reinstate their action. *Id.* ¶ 24; *id.* Ex. 24. On June 18, 2004, Judge Lake granted the motion. *Id.* ¶ 25; *id.* Ex. 25. In a memorandum and opinion addressing both the Costa Rican plaintiffs' original 1996 motion to reinstate and their 2004 motion to remand, Judge Lake explained, first, that under the return jurisdiction clause, the court had retained jurisdiction to "enforce the agreements on which the dismissal was premised and to ensure that an American forum remain[ed] available to adjudicate plaintiffs' claims if and when the highest court of a foreign country dismisse[d] them for lack of jurisdiction." *Id.* Ex. 25 at 30. The motion to reinstate, therefore, was "a direct

continuation of the prior proceedings over which the court expressly stated its intent to retain jurisdiction." *Id.*

Nevertheless, Judge Lake held, the court lacked jurisdiction to decide the plaintiffs' motion to reinstate for two reasons. First, review of such a motion was not necessary to enforce the agreements on which dismissal was premised; and second, after *Patrickson*, no other basis for federal jurisdiction remained. *Id.* Because the court lacked jurisdiction, Judge Lake stated, remand would be required so long as the court had not yet issued a "final judgment" within the meaning of 28 U.S.C. § 1447(c). JSPH Ex. 25 at 34–35. And the court had *not* issued such a judgment, Judge Lake reasoned, because the 1995 *forum non conveniens* dismissal had been "'final' only for purposes of appealing the [decision]"—it had not been "final" in the sense of "extinguish[ing] the court's duty either to continue examining its subject matter jurisdiction over this case, or to remand the underlying cases to state court when and if it determine[d] that it lack[ed] subject matter jurisdiction." *Id.* Ex. 25 at 35–36. Accordingly, Judge Lake granted the motion to remand. *Id.* Ex. 25 at 37–38.

The case therefore returned to the Texas state courts. The parties disputed whether the plaintiffs' claims should be reinstated. *Id.* ¶ 26. The trial court granted the plaintiffs' motion to reinstate, *id.*, and the Texas Court of Appeals affirmed, holding the case properly reinstated. *Id.* ¶ 27.

In September 2009, the plaintiffs finally moved for class certification. *Id.* ¶ 30. The defendants, however, immediately removed the case once more to federal court. They argued that the plaintiffs' motion for class certification was subject to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453(b). *Id.* Ex. 31. This time, however, the federal district court declined to find removal appropriate, because the lawsuit had predated CAFA:

"[T]his action," the court reasoned, "commenced with the filing of the state-court petition in 1993, not in 2009 when the [plaintiffs] submitted their class certification motion." *Id.* Ex. 33 at 5. Because the action long pre-dated CAFA, the defendants had no right to CAFA removal, and therefore no basis for federal jurisdiction. *Id.* The Fifth Circuit denied defendants leave to appeal. *Id.* ¶¶ 34–35.

The plaintiffs therefore finally returned to state court, only to have their motion for class certification denied on June 3, 2010. *Id.* ¶ 37. The next day, plaintiffs voluntarily dismissed the complaint. *Id.* ¶ 38.

### 2. *Chavez*

One year later, in June 2011, plaintiffs in *this* case filed seven DBCP lawsuits in United States District Court for the Eastern District of Louisiana. *Id.* ¶ 61. In September 2012, these suits were dismissed on statute-of-limitations grounds under Louisiana law, *id.* ¶¶ 63–64; *Chaverri v. Dole Food Co.*, 896 F. Supp. 2d 556, 568–74 (E.D. La. 2012). While these cases were pending, however, the same plaintiffs, on June 1 and 2, 2012, filed eight separate DBCP suits in the United States District Court for the District of Delaware, *id.* ¶ 69. The Delaware cases were eventually consolidated, with *Chavez* designated the lead case. *Id.* ¶¶ 70–72. Because the then-pending Louisiana cases had been filed before the Delaware cases, the Delaware district court dismissed plaintiffs' claim against Occidental under the first-filed rule. *Id.* ¶ 73. A Third Circuit panel affirmed. *Id.* ¶ 78. In 2016, however, the Third Circuit reversed *en banc*, resuscitating Plaintiffs' claims against Occidental. *Id.* ¶ 80.

At that point, the case returned to the Delaware district court, where Occidental moved to dismiss for lack of personal jurisdiction. *Id.* ¶ 81. On May 4, 2017, the district court granted the motion in part. *Id.* ¶ 83. Further, at plaintiffs' request, the court transferred the claims against

Occidental to this Court. *Id.* Meanwhile, the court dismissed plaintiffs' claims against the remaining defendants on the ground that those claims were time barred. *Id.* ¶ 75. Plaintiffs appealed. The Third Circuit then certified to the Delaware Supreme Court a question (under Delaware law) that is now front and center before this Court (under New York law): whether "class action tolling end[s] when a federal district court dismisses a matter for *forum non conveniens* and, consequently, denies as moot 'all pending motions,' which include the motion for class certification, even where the dismissal incorporated a return jurisdiction clause stating that 'the court will resume jurisdiction over the action as if the case had never been dismissed for [*forum non conveniens*].'" *Id.* Ex. 84. In June 2017, the Delaware Supreme Court accepted certification, *id.* ¶ 85, but as of the date of this order, has not answered the certified question.

In this Court, the litigation has proceeded with relative dispatch. On June 2, 2017, Occidental answered the complaint. Dkt. 180. On June 12, 2017, the Court held an initial pretrial conference and set a schedule for briefing Occidental's motion for judgment on the pleadings, based on its claim that plaintiffs' claims were time barred. After a series of extensions occasioned by Hurricane Harvey, *see* Dkts. 193, 195, on September 1, 2017, Occidental so moved, Dkt. 196 ("Occidental Br."). On September 29, 2017, plaintiffs opposed the motion, Dkt. 197 ("Opp."), and on October 16, 2017, Occidental filed its reply, Dkt. 200 ("Reply"). On December 12, 2017, Occidental filed a letter appending as supplemental authority a recent decision of the United States Court of Appeals for the Seventh Circuit. Dkt. 202.

## II. Applicable Legal Standards

### A. Motions for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

A motion for judgment on the pleadings is governed by "the same standard" as a motion to dismiss under Rule 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (per curiam)); *accord L–7 Designs*, 647 F.3d at 429. The Court therefore accepts all of the non-movant's factual allegations as true and draws all reasonable inferences in the non-movant's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion for judgment on the pleadings, a party must plead sufficient factual allegations "to state a claim for relief that is plausible on its face," *id.* at 570, meaning that the complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A grant of a motion pursuant to Rule 12(c) is proper 'if, from the pleadings, the moving party is entitled to judgment as a matter of law.'" *Dargahi v. Honda Lease Trust*, 370 F. App'x. 172, 174 (2d Cir. 2010) (summary order) (quoting *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam)).

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L–7 Designs*, 647 F.3d at 422 (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). The Court may also review any document incorporated by reference in a pleading. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). Finally, the Court may consider a document not specifically incorporated by reference but on which the complaint relies and which is integral to it. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

## B. The State Law That Governs

This case was transferred from Delaware to cure a lack of personal jurisdiction: After Occidental moved to dismiss on these grounds, plaintiffs moved to transfer the case against Occidental to this District. *See* Dkt. 135 at 8. "[W]here a plaintiff moves to transfer a case based on diversity of citizenship from one federal trial court to another so as to cure a defect of personal jurisdiction over the defendant, the state law of the transferee forum governs the action for the purposes of the statute of limitations." *Levy v. Pyramid Co. of Ithaca*, 871 F.2d 9, 10 (2d Cir. 1989); *see also Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010) ("If a district court receives a case pursuant to a transfer under . . . 28 U.S.C. § 1631, for want of jurisdiction, it logically applies the law of the state in which it sits, since the original venue, with its governing laws, was never a proper option."). In this court, plaintiffs again claim (and Occidental does not challenge) federal jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a). *See* Compl. ¶ 2; Dkt. 180 ("Answer") ¶ 2. Accordingly, the law applicable to the motion to dismiss based on a claim that the suit was filed outside the statute of limitations is New York's.

## C. New York Law as to Limitations Periods

Under New York's borrowing statute, N.Y. C.P.L.R. § 202, "when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued." *Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015) (quoting *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998)). "For purposes of C.P.L.R. § 202, a cause of action sounding in negligence or product liability accrues in the state where the injury occurs." *Stuart*, 158 F.3d at 627. "Hence, an action by a nonresident on a

foreign cause of action is untimely if it is barred under the law of either New York or the state where the injury occurred." *Id.*

Plaintiffs here are nonresidents advancing causes of action sounding in negligence and product liability. Accordingly, their action must be timely under both New York law and the law of the jurisdictions where their alleged injuries occurred. For present purposes, however, Occidental argues only that Plaintiffs' claims are untimely under New York law.[3] The parties agree that each claim here is subject to a three-year limitations period under New York law. *See* N.Y. C.P.L.R. § 214(5) (personal injury suits subject to three-year limitations period).[4]

Under New York law, the burden of proving that a particular statute of limitations has expired falls on the defendant. *Soward v. Deutsche Bank AG*, 814 F. Supp. 2d 272, 278 (S.D.N.Y. 2011). The plaintiff, however, bears the burden of proving that a particular statute of limitations has been tolled. *Id.*

### III. Discussion

The issue here is whether plaintiffs brought this lawsuit within New York's three-year limitations period. As to the date when that period began to run, under New York law, personal injury claims akin to those here accrue upon a plaintiff's discovery of his or her injury. *See* N.Y. C.P.L.R. § 214-c (personal injury actions arising from exposure to substances are subject to a

---

[3] Occidental has reserved the right to argue that plaintiffs' claims are untimely under the laws of Costa Rica, Ecuador, and Panama. Mot. at 11 n.22.

[4] The parties make scattered references to two- and four-year limitations periods, but other than as to the three-year period that each primarily treats as controlling, they do not cite supporting New York case law. *See, e.g.*, Mot. at 12; Opp. at 14. The Court expects greater precision from counsel in the future as to such matters. At this stage, however, the question is academic: The Court's analysis and outcome would be the same even if the relevant limitations period were two years.

discovery rule). And it is undisputed that plaintiffs' claims were discovered, and thus accrued, by August 31, 1993, with the filing of the *Carcamo* putative class action complaint. *See* Compl. ¶ 149.[5] Absent a toll, plaintiffs' lawsuit would thus have become untimely on August 31, 1996, nearly 16 years before plaintiffs filed this lawsuit on June 1 and 2, 2012.

Plaintiffs, however, argue that the limitations period as to their claims was tolled from August 31, 1993 (when the *Carcamo* complaint was filed) through June 3, 2010 (when the Texas state court denied class certification). A toll of this length would make plaintiffs' June 2012 lawsuit timely. In pursuing such a toll, plaintiffs invoke a doctrine recognized in some states known as "cross-jurisdictional class action tolling." Under this theory, a limitations period is tolled at all times while a complaint based on the same underlying facts is pending in another state on behalf of a putative class that includes plaintiffs as absent members. Plaintiffs allege that, as a result of the Texas DBCP litigation and its sequelae, such was the case here at all times during the period for which they seek tolling. *See* Compl. ¶¶ 146–49.

Occidental disputes that tolling is available here, for two reason. First, Occidental notes, the New York courts have not had occasion to hold whether they would recognize the doctrine of cross-jurisdictional class action tolling. Occidental argues that, if presented with the issue, the New York Court of Appeals, the state's highest court, would not adopt this doctrine. Second, Occidental argues, even if it is assumed that the New York courts would recognize this doctrine, the claims of plaintiffs here would still be time-barred. That is because, Occidental argues, any such toll based on the Texas DBCP litigation would have been terminated by either the July 11,

---

[5] Occidental has reserved the right to argue, if discovery bears out this claim, that individual plaintiffs in fact discovered their alleged DBCP injuries earlier. Mot. at 11 n.22.

1995 dismissal on *forum non conveniens* grounds or the October 27, 1995 entry of "Final Judgment" that allegedly terminated the *Carcamo/Delgado* class action.

For the reasons that follow, the Court holds with plaintiffs on both points. First, the Court holds, it is most likely that New York would apply cross-jurisdictional tolling. Second, the Court holds, applying that doctrine to the complex circumstances of the Texas litigation on which plaintiffs' claim of tolling rests, plaintiffs' claims were tolled continuously from August 31, 1993 through June 3, 2010, making this action timely.

### A.   Would New York Recognize Cross-Jurisdictional Tolling?

The doctrine of cross-jurisdictional tolling derives from the familiar rule announced by the Supreme Court in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974): "[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554. Under the *American Pipe* rule, once a class action commences, the statute of limitations "remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983).

The *American Pipe* rule, however, applies only to claims arising under federal law and thus implicating federal question jurisdiction. *See* 1 McLaughlin on Class Actions § 3:15 (14th ed.) ("*American Pipe* did not itself announce any tolling rule applicable to state law claims."). States remain free to adopt alternative rules as to whether the pendency of a state-law class action, whether filed within or without the state, tolls the state's statutes of limitation. As a result, a federal court sitting in diversity "must look to the law of the relevant state to determine

whether, and to what extent, the statute of limitations should be tolled by the filing of a putative

class action in another jurisdiction." *Casey v. Merck & Co., Inc.*, 653 F.3d 95, 100 (2d Cir.

2011). The court here therefore faces an *Erie* question: whether the relevant state (here, New

York) has adopted, or, in the absence of clear authority, would adopt, cross-jurisdictional tolling.

The New York courts have not squarely addressed whether New York law permits cross-

jurisdictional tolling. Significantly, New York courts have embraced *American Pipe* tolling as to

state-law class actions originally filed within New York. *See, e.g.*, *Osarczuk v. Associated

Univs., Inc.*, 12 N.Y.S.3d 286, 289 (2d Dep't 2015) (listing cases). But as the federal courts to

consider this question have observed, and as the parties here acknowledge, the New York courts

have yet to decide specifically whether *American Pipe* tolling applies to putative class actions

filed in other jurisdictions. *See, e.g.*, *Famular v. Whirlpool Corp.*, No. 16 CV 944 (VB), 2017

WL 2470844, at *7 (S.D.N.Y. June 7, 2017) ("Although New York courts recognize tolling

when the prior case was also filed in New York, this Court is not aware of a New York state

court that has addressed whether New York recognizes tolling based on a case filed outside New

York."); *Soward*, 814 F. Supp. 2d at 281 ("None of the cases cited by [the parties], or indeed

uncovered by this Court, answers the question as to whether New York would allow cross-

jurisdictional tolling.").

Courts in this District have split, 2-2, on in their predictions as to whether the New York

Court of Appeals would apply cross-jurisdictional tolling as a matter of New York law. Judges

Briccetti and Buchwald have applied such tolling; Judges Scheindlin and Sweet have declined to

do so. *Compare Famular*, 2017 WL 2470844, at *7–9 (applying cross-jurisdictional tolling

based on prediction that New York Court of Appeals would do the same), *and In re LIBOR-

Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2015 WL 6243526, at *138–

41, 145–46 (S.D.N.Y. Oct. 20, 2015) (same), *with In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 311–12 (S.D.N.Y. 2014) (declining to recognize cross-jurisdictional tolling given that New York courts have not yet addressed the issue), *aff'd sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173 (2d Cir. 2016), *and Soward*, 814 F. Supp. 2d at 281 (same).

On careful consideration of the parties' arguments and the thoughtful assessments of this Court's colleagues, the Court's conclusion is that, although the matter is not free of doubt, New York most likely would recognize cross-jurisdictional class-action tolling.

The analysis begins with a threshold question: May a federal court sitting in diversity apply uncertain state law so as to *expand* the availability of state remedies? In declining to adopt cross-jurisdictional tolling, Judge Scheindlin, for instance, voiced concern that "extend[ing] the doctrine into a state that has yet to consider it" would run afoul of the "general principle that, in trying to determine how the highest state court would interpret the law, we should not create or expand that State's public policy." *Soward*, 814 F. Supp. 2d at 281–82 & n.64 (internal quotation marks omitted) (quoting *Wade v. Danek Med., Inc.*, 182 F.3d 281, 286 (4th Cir. 1999)).

But Judge Buchwald persuasively responded to that concern in *In re LIBOR-Based Financial Instruments*. She observed that "a proper respect for state judiciaries does not require . . . timidity" in the face of state-law ambiguity where one outcome might extend recognized state remedies. 2015 WL 6243526, at *141. Rather, she observed, a federal court's duty is not outcome-driven: It is "to predict accurately what the high court of a particular state would do in the same circumstance, and we fail equally in this duty when we erroneously dismiss a case that the state courts would sustain as we do when we erroneously sustain a case that a state court would dismiss." *Id.*; *see also Famular*, 2017 WL 2470844, at *8 ("[T]he Court

would be ignoring its duty by adopting a presumption against imposing a legal rule the state courts have not addressed without a reasoned basis for doing so.").

This Court agrees. The determinative question is not whether the rule in question would expand or contract a state's public policy as remedies. Rather, the Court is to predict, based on existing law, how the highest court of the forum state would resolve the uncertainty. *See, e.g.,* *Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 82 (2d Cir. 1995) (directing courts interpreting ambiguous state statutes to consider, *inter alia*, "how the statute can be woven into the state law with the least distortion of the total fabric").

Occidental similarly misses the mark when it urges the Court to reject plaintiffs' bid for tolling at the threshold, on the grounds that "federal courts should be wary of expanding on or creating a state's public policy, particularly when it comes to the tolling of a state's limitations periods." Occidental Br. at 14. New York courts have indeed held that "tolling provisions [in New York] should not readily be given an expansive interpretation tending to undermine the basic purposes behind the Statutes of Limitation." *McCarthy v. Volkswagen of Am., Inc.*, 55 N.Y.2d 543, 548 (1982). But Occidental's argument begs the question of whether recognizing tolling here would undermine those purposes. For the Court to predict whether the New York Court of Appeals would adopt cross-jurisdictional tolling requires assessing, concretely in light of precedent illuminating state policy, whether the tolling of a statute of limitations based on a parallel pending putative class action in a sister state would align with, or offend, New York state policy with respect to statutes of limitation. Contrary to Occidental's suggestion, in cases where state decisional law as to the availability of remedies is as yet unresolved, the Court is not simply to treat the default answer as "no."

Occidental's stronger argument is on the merits: that New York state policy disfavors adopting a cross-jurisdictional tolling rule. Occidental argues that recognizing tolling in such circumstances would foist upon the state "a disproportionate share of suits which the federal courts have refused to certify as class actions after the statute of limitations has run." Occidental Br. at 16 (quoting *Vincent v. Money Store*, 915 F. Supp. 2d 553, 570 (S.D.N.Y. 2013)); *see also In re Bear Stearns*, 995 F. Supp. 2d at 312 (same). In effect, Occidental argues, adoption of a cross-jurisdictional tolling rule would encourage individual out-of-state plaintiffs who were absent members of a putative class elsewhere to flock to New York following the dismissal or denial of class certification of such cases brought in other states. Occidental further argues that recognizing cross-jurisdictional tolling would invite the possibility of "unending tolling periods." These concerns, Occidental argues, would mark a sufficiently substantial shift in New York public policy as to justify leaving adoption of such a rule, in the first instance, to the New York courts.

The broader concern Occidental raises about leaving potentially consequential decisions about the scope of state remedies to state courts is valid. "[O]ur circuit takes a very strong position that state issues should be decided by state courts." *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017) (Calabresi, J., concurring). For this reason, as explained below, the Court will certify this order for interlocutory appeal, mindful of the possibility that this case may prove an appropriate vehicle for certification to the New York Court of Appeals, and will stay further proceedings here, including the start of discovery, pending resolution of any interlocutory appeal.

Nevertheless, as the case stands, the Court is left "carefully to predict" whether the New York Court of Appeals would permit cross-jurisdictional tolling. *Chauca v. Abraham*, 841 F.3d

19

86, 93 (2d Cir. 2016). On balance, and largely for the reasons stated by Judge Buchwald in *In re Libor-Based Financial Instruments*, the Court is persuaded that the New York Court of Appeals would adopt cross-jurisdictional tolling, notwithstanding Occidental's concern that such a rule would make New York a magnet for follow-on lawsuits after failed bids for class certification.

First, and most important, the fact that New York courts have extended the principle of *American Pipe* tolling to cover lawsuits originally filed in New York suggests that the Court of Appeals is likely to adopt cross-jurisdictional tolling as well. *American Pipe* tolling derives primarily from three principles: "a class complaint gives fair notice of claims to defendants; a putative class member acts reasonably when he relies on a class action to vindicate his rights; and run-of-the-mill individual suits are disfavored when a class action is viable because too many individual suits would subvert the modern class-action mechanism." *In re Libor-Based Fin. Instruments*, 2015 WL 6243526, at *140 (citing *Am. Pipe*, 414 U.S. at 550–51); *see also Am. Pipe*, 414 U.S. at 553–56. These principles apply with equal force in the context of cross-jurisdictional tolling: "A class action gives defendants just as much notice of an individual's claims regardless of where each case happens to be filed," a putative class member acts no less reasonably in relying on a foreign class action to vindicate his rights than on an in-state class action, and "denying cross-jurisdictional tolling would, at the margin, encourage parallel, individual litigation while a viable class action is pending." *In re Libor-Based Fin. Instruments*, 2015 WL 6243526, at *140.

This case, in fact, supplies an excellent illustration of the reasonableness of such reliance by an absent class member on a pending class action filed outside this jurisdiction. The injuries allegedly suffered by the class were experienced abroad, at the hands of multiple U.S. chemical manufacturers based in different states. For as long as the named plaintiffs pursued a live

putative class action on behalf of a nationwide class against such manufacturers, the absent class members reasonably anticipated vindicating their rights in that lawsuit. It was reasonable for these class members to stay their hands and to hold off initiating individual actions against each particular manufacturer, whether in New York and/or the other states in which such entities were based.

Second, some lower New York courts have already applied N.Y. C.P.L.R. § 205(a), the statute tolling plaintiffs' claims following certain kinds of non-merits dismissals, in the cross-jurisdictional, class action context. In *Stylianou v. Incorporated Village of Old Field*, 805 N.Y.S.2d 573 (2d Dep't 2005), for instance, the Second Department held that plaintiffs' state-law class claims were tolled during the pendency of their federal class action raising the same claims. *Id.* at 574; *see also Kleinberger v. Town of Sharon*, 501 N.Y.S.2d 746, 748 (3d Dep't 1986). Although such cases do not reveal with assurance how the New York Court of Appeals would respond to a bid by absent class members for a toll in deference to a pending out-of-state class action, they do indicate that New York is not categorically averse to tolling based on a class action pending elsewhere.

Third, the Court is unpersuaded by Occidental's concern that recognizing cross-border tolling would open the floodgates to New York litigation. To begin with, to the extent that the rule plaintiffs urge carries some risk of inviting lawsuits from absent class members following the demise of an out-of-state class action, the contrary rule of not recognizing a toll in deference to a pending class action elsewhere carries its own risk of incentivizing problematic filings: Such a rule could inspire a profusion of duplicative "placeholder" suits intended to preserve as broadly as possible plaintiffs' rights while other class actions remain pending elsewhere. *See In re Libor-Based Fin. Instruments*, 2015 WL 6243526, at *139.

The DBCP litigation again supplies a good illustration. Courts across the country have had to contend with placeholder DBCP suits, paralleling the existing class actions, filed solely to maximize the likelihood that some forum would one day be available to resolve plaintiffs' claims on the merits. This inefficiency can be justified only if the contrary inefficiency—*i.e.*, a flood of stale, out-of-state claims following the demise of putative class actions in non-New York fora— would impose an equal or greater burden. But Occidental fails to offer even anecdotal evidence that any of the states that have adopted the *American Pipe* principle and applied it to cross-jurisdictional tolling[6] have buckled under the weight of such late-in-the-day filings.

In any event, even if out-of-state plaintiffs were drawn to New York by virtue of a cross-jurisdictional tolling rule, New York already has a mechanism in place to prevent opportunistic filings. As explained above, New York's borrowing rule, N.Y. C.P.L.R. § 202, provides that claims accruing outside of New York cannot be commenced within New York after the expiration of the accrual state's statute of limitations.[7] Given that rule, and given the potential difficulties of establishing personal jurisdiction over a defendant, an out-of-state class plaintiff ought to have no special incentive to bring his claims in New York absent a sound factual basis for suing here (*e.g.*, as alleged here, that New York is a proper forum in which to sue a particular defendant in a multi-defendant case).

---

[6] Though few states have addressed the issue, the majority to do so have embraced cross-jurisdictional tolling. *See* 1 McLaughlin on Class Actions § 3:15. These states include: Delaware, *Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 397 (Del. 2013); Michigan, *Lee v. Grand Rapids Bd. of Educ.*, 148 Mich. App. 364, 369–70 (Mich. Ct. App. 1986); Missouri, *Hyatt Corp. v. Occidental Fire & Cas. Co. of N.C.*, 801 S.W.2d 382, 389 (Mo. Ct. App. 1990); Montana, *Stevens v. Novartis Pharm. Corp.*, 358 Mont. 474, 489–90 (2010); New Jersey, *Staub v. Eastman Kodak Co.*, 320 N.J. Super. 34, 54–55 (Super. Ct. App. Div. 1999); and Ohio, *Vaccariello v. Smith & Nephew Richards, Inc.*, 94 Ohio St. 3d 380, 382–83 (Ohio 2002).

[7] For this reason, as noted earlier, Occidental may yet have recourse to statute of limitations defenses under the laws of Costa Rica, Ecuador, and Panama.

The Court is also unpersuaded by Occidental's argument that cross-jurisdictional tolling would invite "unending" tolling of statutes of limitations. The same argument of course could have been made in opposition to *American Pipe* tolling in general, yet such tolling as to federal claims has been the rule for more than 40 years, without evident ill effects. And this case again illustrates the risks of not recognizing such a toll. Occidental emphasizes the 17-year history of the DBCP litigation, arguing that a cross-jurisdictional tolling rule will embolden absent class members to sleep on their rights, thereby denying defendants reasonable repose. Conceivably such a circumstance could arise—the scenario defendants imagine is not implausible. However, as the Delaware Superior Court observed in a separate offshoot of this dispute, the procedural history of this litigation may support an alternative interpretation. "[T]he fair reading of the procedural history here," it stated, "is that defendants have attempted to tranquilize these claims through repeated forum shopping removals and technical dismissals, playing for time and delay and striving to prevent, or arguably frustrate, the claims from ever being heard on the merits in any court." *Blanco v. AMVAC Chem. Corp.*, No. N11C-07-149 JOH, 2012 WL 3194412, at *12 (Del. Super. Ct. Aug. 8, 2012). To be sure, this Court has had insufficient exposure to the protracted DBCP litigation to similarly comment on defendants' objectives in defending as they have. And it is important to recognize that much of the delay in the *Carcamo* and *Delgado* litigation in Texas, and in haling Occidental before an apt forum in this successor litigation, has been due to defendants' *success* on various motions in other forums. Nevertheless, the Delaware Superior Court's observation supplies an important reminder that a legal regime that does not recognize cross-border tolling may incent a defendant to pursue delay, so as to run out the clock as to the claims of absent class members.

For all of these reasons, the Court concludes that, in all likelihood the New York Court of Appeals would recognize cross-jurisdictional tolling.

**B.     Whether this Action Was Tolled**

Having held that New York law permits cross-jurisdictional class action tolling, the Court next considers under that doctrine whether, as plaintiffs contend, the claims here were tolled until June 1, 2009, or whether, as defendant argues, any toll ended sooner. This inquiry, too, is a matter of predicting New York law. But because the Court assumes that New York would adopt the reasoning of *American Pipe* and its progeny, the Court likewise assumes, along with the parties here, that New York would apply tolling rules similar in substance to those applied in the federal system.

Under *American Pipe*, class action tolling persists "until class certification is denied." *Crown, Cork & Seal*, 462 U.S. at 354. Thus "*American Pipe* tolling does not extend beyond the denial of class status." *Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 116 (2d Cir. 2013). In other words, "once class status has been disallowed," or a plaintiff's "attempt to secure class status fail[s], the statute of limitations beg[ins] to run again." *Id.* at 117.

Although in many cases, the application of this tolling doctrine is clear-cut, challenging questions applying the doctrine can arise in circumstances where there has not been a decision specifically terminating a motion for class certification as non-meritorious. The parties here draw upon different strands of the case law applying *American Pipe* as to what must occur for a court to find that a named plaintiff's "attempt to secure class status [has] fail[ed]." *Id.* Plaintiffs, citing *Cullen v. Margiotta*, 811 F.2d 698, 719 (2d Cir. 1987), argue that only a "clear, specific, and unambiguous order ending the class claims" can terminate class action tolling. Occidental, while accepting this framing, emphasizes that to meet this standard, an order need not "address

24

whether [Rule 23's] class action criteria have been met." Rather, Occidental argues, the decisive question is whether, in light of the order in question, the absent class members could *reasonably* have continued to rely on the pending class action as protecting their interests. Occidental Br. at 19–20 (citing *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 211 (4th Cir. 2006)).

As the Second Circuit has held, only a decision definitively disallowing class status terminates *American Pipe* tolling. *See Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987). But, as this Court has recognized, a dismissal of class claims may definitively disallow class status even where it does not identify a substantive Rule 23 deficiency. *See, e.g.*, *Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 477–78 (S.D.N.Y. 2016) (holding dismissal of all class claims without leave to replead left plaintiffs with no reason to expect their class action "would rise from the dead"). But, in gauging whether such a dismissal operates to terminate *American Pipe* tolling, the specific circumstances of such a dismissal matter. Tolling might, for instance, "continue through an initial dismissal of class claims because the class action complaint was dismissed with specific leave to amend certain class claims." *Id.* at 477 (citing *Scott v. D.C.*, 87 F. Supp. 3d 291, 298 (D.D.C. 2015)); *see also Betances v. Fischer*, 144 F. Supp. 3d 441, 457–58 (S.D.N.Y. 2015). The key question, therefore, is not whether the district court order addressed class certification. Rather, it is whether, under the circumstances, absent plaintiffs' continued "reliance on the class action to advance their claims would have been unreasonable." *Shak*, 156 F. Supp. 3d at 478 (quoting *In re Initial Pub. Offering Sec. Litig.*, 617 F. Supp. 2d 195, 200 (S.D.N.Y. 2007)); *see also Giovanniello*, 726 F.3d at 117 ("[*American Pipe*'s] objectively reasonable reliance rationale breaks down once the district court disallows class status."). As defendant here puts the point: "[T]he touchstone for determining whether class-action tolling

has ended is whether it would be 'objectively reasonable' for a plaintiff to continue relying on the action to protect his claims." Reply at 8 (quoting *Giovanniello*, 726 F.3d at 117).

Applying this standard, the Court holds that Judge Lake's two 1995 orders did not clearly disallow class status. On the contrary, both orders anticipated that the *Carcamo/Delgado* class action would continue to be pursued, albeit potentially in different judicial fora. The Court therefore holds that absent class members such as the plaintiffs here, following these orders, could reasonably have relied thereafter on the continued maintenance of the *Carcamo/Delgado* putative class action. The Court addresses these two orders in turn, noting at the outset that neither of these orders addressed the merits of class certification.

The first such order was the July 11, 1995 dismissal on grounds of *forum non conveniens*. That order "denied as moot" all other pending motions, which this Court treats as encompassing a pending motion for class certification.[8] *Delgado*, 890 F. Supp. at 1375. That the motion for class certification was terminated for reasons other than the merits, and specifically to permit the named plaintiffs to pursue the same lawsuit in more convenient fora (which in fact they did), tends to support that it was reasonable for plaintiffs here to continue to rely on the *Carcamo/Delgado* putative class action as protecting their interests. *Cf. Betances*, 144 F. Supp. 3d at 457–58 (applying *American Pipe* tolling notwithstanding prior dismissals on qualified

---

[8] Although the matter is not free from doubt, the category of other pending motions covered by this dismissal order is best read to include a motion for class certification. While a formal Rule 23 motion had not been filed in federal court, the *Carcamo/Delgado* plaintiffs had earlier moved for class certification while the case was pending in state court. JSPH ¶ 6. And Judge Lake had both commissioned letter briefing on class certification under Rule 23 and directed plaintiffs to file a copy of their amended motion for class certification. *Id.* ¶¶ 9–11, 13; *id.* Ex. 9 at 2. The plaintiffs thereafter "pray[ed]" that their motion for certification be granted," *id.* Ex. 13 at 10, and Judge Lake's dismissal on grounds of *forum non conveniens* noted that "plaintiffs have sought class certification in several of the pending actions," *Delgado*, 890 F. Supp. at 1368. Under these circumstances, it is fair to conclude that among the motions that the dismissal order terminated as moot was a motion for class certification.

immunity grounds, including one denying class certification motion as moot; "[b]ecause the appropriateness of a class action had not been addressed in any of the previously-filed putative class actions, *American Pipe* tolling applies").

More important, the July 11, 1995 dismissal order effected only a *conditional* dismissal. *See Delgado*, 890 F. Supp. at 1375. The court retained jurisdiction over the action to "ensure that an American forum remain[ed] available to adjudicate plaintiffs' claims if and when the highest court of a foreign country dismisse[d] them for lack of jurisdiction." JSPH Ex. 25 at 30. The order thereby held out the guarantee of "resum[ing] jurisdiction . . . as if the case had never been dismissed." 890 F. Supp. at 1375. As such, Judge Lake's dismissal order was a far cry from a paradigmatic order that could be taken as implying the impossibility of a future class action, such as an order granting with prejudice a motion to dismiss under Rule 12(b)(6). Here, in contrast, Judge Lake's order expressly informed absent class members that their class action would either proceed in a foreign forum or, if jurisdiction there proved lacking, remain within his court's jurisdiction. At minimum, therefore, the July 11, 1995 dismissal order on grounds of *forum non conveniens* "did not terminate class action tolling in a sufficiently clear and unambiguous way in order to put putative members of the class on notice that the [foreign state] statute of limitations had begun to run against them." *Patrickson*, 137 Hawai'i at 228–29 (internal quotation marks omitted); *see also Blanco*, 2012 WL 3194412, at *12 (holding that the July 11, 1995 *forum non conveniens* order did not terminate tolling because it did not address the merits of class certification and because the return jurisdiction clause rendered the order the functional equivalent of a stay).

The second such order was the October 27, 1995 "Final Judgment." It, too, fell short of unequivocally interring any pending class action. Although the Supreme Court of Hawaii and a

Louisiana federal district court have held that this decision conclusively denied class status, *see Patrickson*, 137 Hawai'i at 229; *Chaverri*, 896 F. Supp. 2d. at 569, this Court holds otherwise. That order did not set out any reasoning and did not abrogate the return jurisdiction clause of the July 11, 1995 order. Rather, the October 27, 1995 order merely used the "Final Judgment" label to certify that the domestic conditions of dismissal earlier set by Judge Lake had been met. JSPH Ex. 17. The October 27, 1995 order therefore did nothing to undermine the reasonableness of absent class members' reliance on the return jurisdiction clause as assuring that a judicial forum—foreign or domestic—would remain in which the case, a putative class action, could proceed.

Further, as Judge Lake explained, the October 27, 1995 order was not "final" in the sense of permanently extinguishing the case (or the possibility of class certification). The decision was "final" only insofar as it triggered the named plaintiffs' right to appeal. *Id.* Ex. 25 at 35–36. For that reason, once the Costa Rican plaintiffs returned to Judge Lake's court with a motion to reinstate, invoking the return jurisdiction clause, Judge Lake held that that motion was "a direct continuation of the prior proceedings over which the court expressly stated its intent to retain jurisdiction." *Id.* Ex. 25 at 30.

The Court accordingly holds that neither of Judge Lake's 1995 orders terminated the *Carcamo/Delgado* litigation, let alone disallowed class status or signified that the attempts of the named plaintiffs there to "secure class status [had] fail[ed]." *Giovanniello*, 726 F.3d at 117. On the contrary, absent class members such as the plaintiffs here, following those orders, could reasonably have relied on the maintenance of the putative class action—whether pursued abroad, or back in Judge Lake's court pursuant to the return jurisdiction clause of the July 11, 1995 order—as protecting their rights. Accordingly, their claims were tolled until class certification

was actually denied, in 2010. *Id.* ¶ 37. As such, the 2012 complaint in *Chavez* was timely filed, and Occidental's motion for judgment on the pleadings must be denied.[9]

## IV.    Certification

28 U.S.C. § 1292(b) permits a district court, in its discretion, to certify an interlocutory appeal where the decision at issue (1) involves a controlling question of law (2) as to which there is substantial ground for a difference of opinion and (3) as to which an immediate appeal may materially advance the ultimate termination of the litigation. *See Mejia v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2017 WL 5513638, at *2 (S.D.N.Y. Nov. 17, 2017); *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 46–47 (1995). A district court may so certify *sua sponte*. *See Riverkeeper, Inc. v. U.S. E.P.A.*, 514 F. Supp. 2d 565, 570 (S.D.N.Y. 2007).

Typically, certification is reserved for "exceptional circumstances." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). But "[w]hen a ruling satisfies [all three] criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory

---

[9] Because the *Carcamo/Delgado* action tolled the statute of limitations continuously until 2010, the Court, to find this action timely, need not rely on plaintiffs' alternative argument that the action was separately tolled by the filing of the Hawaii putative class action. In the interest of completeness, however, the Court notes that that action also would have justified a toll during its pendency. Occidental argues that "[p]utative class members may not piggyback one class action onto another and thus toll the statute of limitations indefinitely." But *Korwek*, the case on which Occidental relies for that broad proposition, does not so hold. *See* 827 F.2d at 878. *Korwek* held only that "*American Pipe* does not apply to permit a plaintiff to file a subsequent class action following a *definitive* determination of the inappropriateness of class certification." *Id.* at 879 (emphasis added); *see also Betances*, 144 F. Supp. 3d at 457 (rejecting argument that *Korwek* applies absent a definitive determination concerning class certification). In this case, in contrast, as of the initiation of the Hawaii action, there had been no "definitive determination of the inappropriateness of class certification." Plaintiffs here are not fairly accused of having "stacked" failed class actions—the mischief against which *Korwek* guards.

appeal.'" *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)).

Whether New York law permits cross-jurisdictional class action tolling is both a disputed question of law in this District and an issue whose resolution in plaintiffs' favor is a necessary predicate to the continued survival of this complex and important multi-national litigation. Because the Court's decision satisfies all three § 1292(b) criteria and involves a question of substantial significance to New York public policy, the Court *sua sponte* certifies this order for interlocutory appeal.

Under the first requirement, the question presented for certification must be "a controlling question of law." A question is "controlling" if it would either "terminate the action," or at least "materially affect the litigation's outcome." *Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007) *aff'd*, 543 F.3d 104 (2d Cir. 2008), *abrogated in part on other grounds by Shipping Corp. of India, Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 67 (2d Cir. 2009). Affirmative defenses are frequently "suitable for appeal, [where] the effort is to defeat the entire claim or to limit the issues that remain to be tried." 16 Wright & Miller, *Federal Practice and Procedure* § 3931 (3d ed. 2017). Accordingly, limitations defenses are "[a]mong the defenses that regularly provide occasion[] for § 1292(b) appeal." *Id.* Indeed, the Second Circuit has often granted interlocutory review of limitations questions, regardless whether the court below dismissed the suit or, as here, found it timely. *See, e.g., Axel Johnson, Inc. v. Arthur Andersen & Co.*, 6 F.3d 78, 81 (2d Cir. 1993) (granting interlocutory appeal where district court dismissed on statute of limitations grounds); *Okure v. Owens*, 816 F.2d 45, 46 (2d Cir. 1987) (granting interlocutory appeal where district court rejected statute of limitations defense), *aff'd, Owens v. Okure*, 488 U.S. 235 (1989).

There is no doubt that the statute of limitations defense in this case poses an outcome-determinative question of law. This Court has held that New York law recognizes cross-jurisdictional class action tolling. If the Court of Appeals takes the contrary position, the statute of limitations would compel dismissal of all claims.

The second requirement—that there be "substantial ground for difference of opinion" regarding the controlling question of law—also favors certification. "A substantial ground for difference of opinion exists when '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'" *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 539 (S.D.N.Y. 2014) (quoting *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013)). As outlined above, this decision deepens a split among courts in this District as to whether cross-jurisdictional tolling applies as a matter of New York law. *Compare Famular*, 2017 WL 2470844, at *7–9 (applying cross-jurisdictional tolling under New York law), *and In re LIBOR-Based Fin. Instruments*, 2015 WL 6243526, at *138–41, 145–46 (same), *with In re Bear Stearns*, 995 F. Supp. 2d at 311–12 (declining to recognize cross-jurisdictional tolling under New York law), *and Soward*, 814 F. Supp. 2d at 281 (same).

The issue is also a difficult one on which reasonable minds can disagree and which the Second Circuit has not yet addressed.[10] Although this Court holds that New York courts would

---

[10] The Court of Appeals recently denied interlocutory review of a district court decision addressing the issue of whether New York would recognize cross-jurisdictional class action tolling. *See* Order Denying Interlocutory Appeal, *Famular v. Whirlpool Corp.*, No. 17-1918 (2d Cir. Oct. 10, 2017), ECF No. 24. The district court decision in *Famular*, however, involved several confounding issues not present here, including questions of personal jurisdiction and New York contract law. *See Famular*, 2017 WL 2470844. This case, in contrast, appears to present the tolling issue in unalloyed form.

apply cross-jurisdictional tolling, its opinion is only a prediction, and one subject to forceful counterargument not only by Occidental, but also by the Court's colleagues in this District.

The issue is also a pure question of New York law, on which the New York courts have remained silent. It is therefore a strong candidate for certification, by the Second Circuit, to the New York Court of Appeals. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a) (permitting certification of "determinative questions of New York law . . . for which no controlling precedent of the Court of Appeals exists.") Indeed, the Second Circuit has previously certified to the Supreme Court of Virginia the question whether Virginia law permitted cross-jurisdictional class action tolling. *See Casey*, 653 F.3d at 97. The Second Circuit may choose to follow the same course here. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a) (permitting any federal Court of Appeals or court of last resort to certify); N.Y. Const. art. VI, § 3(b)(9) (same).[11]

Finally, the third requirement, which reserves interlocutory appeal "for those cases where an intermediate appeal may avoid protracted litigation," also supports certification. *See Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865–66 (2d Cir. 1996). "[O]ne of the chief concerns of Section 1292 is the efficiency of the federal court system, and efficiency is of particular concern in large complex cases." *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2003 WL 22953644, at *4 (S.D.N.Y. Dec. 16, 2003) (citing *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 Civ. 1262 (RWS), 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997)), *aff'd sub nom. Cal. Pub. Emps. Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004). Accordingly, "in so-called 'big' cases, courts may grant certification more freely, while remaining attuned to the inefficiency of

---

[11] The Second Circuit may also consider certifying to the New York Court of Appeals whether, assuming New York does permit cross-jurisdictional tolling, plaintiffs' claims here were tolled continuously through 2010 as a matter of New York law. That question, however, does not implicate the same broad policy concerns.

having the Court of Appeals hear numerous appeals in the same case." *Id.* (internal quotation marks omitted).

This is a large, complex, international, and—treating this litigation as a continuation of its *Carcamo/Delgado* forebear—longstanding case. If it proceeds forward, it will assuredly call heavily upon the resources, money, time, and commitment of all parties. In the near term, this case will likely involve substantial litigation on plaintiff-specific and foreign statute of limitations issues, some of which are likely to require substantial discovery. And on the merits, because this is a long-delayed case spanning two continents, involving complex questions of science and causation, and implicating the activities of multiple manufacturers beyond the defendant in this forum, the Court anticipates a protracted discovery process, both as to fact and expert discovery. Before the Court sets these processes in motion, it is sensible for the Second Circuit, and through it the New York Court of Appeals, to have the opportunity to resolve whether cross-jurisdictional tolling is indeed available in New York, as a resolution in defendants' favor of this question would moot the need for further litigation. *See Tanasi v. New Alliance Bank*, 786 F.3d 195, 198 (2d Cir. 2015).

## CONCLUSION

For the foregoing reasons, the Court denies Occidental's motion for judgment on the pleadings. The Clerk of Court is respectfully directed to close the motion pending at Dkt. 196. The Court also lifts the stay imposed by this Court's June 12, 2017 order. *See* Dkt. 188.

Within 10 business days of this order's issuance, Occidental shall file a letter via ECF stating whether it has moved before the Second Circuit for leave to appeal. If Occidental so moves, the Court will stay this matter in its entirety pending resolution of the appeal. If

Occidental does not pursue an interlocutory appeal, the Court will issue an order directing the parties to confer and propose a joint schedule going forward.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: January 10, 2018
New York, New York